**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOPE MAGEE, individually and as Successor in Interest to JACOREY SHAW, deceased, et al., <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF TUOLUMNE, et al., <br><br> Defendants. | CASE NO. 1:19-cv-01522-AWI-BAM <br><br> **ORDER GRANTING DEFENDANT TUOLUMNE COUNTY'S MOTION FOR SUMMARY JUDGMENT; AND** <br><br> **ORDER TO SHOW CAUSE** <br><br> (Doc. No. 59) |

Defendant Tuolumne County brings a motion for summary judgment on Plaintiffs' Fifth Cause of Action for negligent mishandling of remains. Doc. No. 59. The motion has been fully briefed and deemed suitable for decision without oral argument pursuant to Local Rule 230(g). For the reasons set forth below, the motion will be granted.

## PROCEDURAL HISTORY

Jacorey Shaw was an inmate at the Sierra Conservation Center ("SCC"), a correctional facility operated by the California Department of Corrections and Rehabilitation ("CDCR"). Doc. No. 33 ¶ 15. He died in custody on September 6, 2018 while participating in a firefighter training session offered by the SCC and conducted by Dennis Jordan-Curasi. Doc. No. 33 ¶ 16.

Mr. Shaw's parents, Hope Magee and Paul Shaw (together, "Plaintiffs"),[1] filed this action

---

[1] Jacorey Shaw is referred to herein as "Mr. Shaw."  Paul Shaw is referred to as "Mr. Shaw's father."

in the United States District Court for the Central District of California on September 11, 2019.

Doc. No. 1. It was transferred to this Court on October 28, 2019. Doc. Nos. 1, 14. On July 7, 2020,

Plaintiffs filed a First Amended Complaint ("FAC") (now the operative complaint) alleging claims

against Mr. Jordan-Curasi for failure to protect, denial of medical care and substantive due process

violations under 42 U.S.C. § 1983, and for negligent wrongful death under Section 815.2,

subdivision (a), and Section 820, subdivision (a), of the California Government Code. Doc. No. 33

¶¶ 21-49, 50-54. The FAC also alleges, as the Fifth Cause of Action, a claim against Mr. Jordan-

Curasi, Tuolumne County and Stanislaus County for negligent mishandling of remains. Id. ¶¶ 55-

57.

On January 20, 2022, the Court dismissed Mr. Jordan-Curasi as a defendant with prejudice,

pursuant to stipulation. Doc. No. 83. Consequently, the only remaining claims in this action are

the claims against Tuolumne County and Stanislaus County for negligent mishandling of remains.

Doc. No. 33 at 14. That claim alleges that employees of Tuolumne County and Stanislaus County

"failed to exercise reasonable and ordinary care" in the handling of Mr. Shaw's remains, and that

as a result, Mr. Shaw's remains experienced extreme decomposition prior to his funeral, causing

Plaintiffs severe emotional distress. Id. at 14-15.

Stanislaus County filed a statement of non-opposition to Tuolumne County's motion but

has not filed a summary judgment motion of its own. Doc. No. 60.

## **LEGAL FRAMEWORK**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

appropriate when it is demonstrated that there exists no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(a); see Fortyune

v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079–80 (9th Cir. 2004). The moving party bears the

initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp. v.

Catrett, 477 U.S. 317, 323–24 (1986). That burden may be met by " 'showing'—that is, pointing

out to the district court—that there is an absence of evidence to support the nonmoving party's

case." Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000) (quoting id. at

325) (some internal quotation marks omitted).

1    "Once the moving party carries its initial burden, the adverse party 'may not rest upon the

2    mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other

3    sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.' "

4    Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Fed.R.Civ.P. 56(e)) (other

5    citations omitted); see also Fairbank, 212 F.3d at 531 ("Once the moving party has met its initial

6    burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts

7    which show a genuine issue for trial."). If the nonmoving party does not produce enough evidence

8    to create a genuine issue of material fact after the burden has shifted, the moving party is entitled

9    to summary judgment. Fed.R.Civ.P. 56(c); Nissan Fire & Marine Ins. Co. v. Fritz Companies,

10   Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

11   In ruling on a motion for summary judgment, a court does not make credibility

12   determinations or weigh conflicting evidence, and a court must draw all inferences in the light

13   most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

14   475 U.S. 574, 587-88 (1986); Ting v. United States, 927 F.2d 1504, 1509 (9th Cir. 1991).

15   "Only disputes over facts that might affect the outcome of the suit under the governing law

16   will properly preclude the entry of summary judgment," Anderson v. Liberty Lobby, Inc., 477

17   U.S. 242, 248 (1986), and the non-moving party "must do more than simply show that there is

18   some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; see Liberty

19   Lobby, 477 U.S. at 247-48 ("the mere existence of *some* alleged factual dispute between the

20   parties will not defeat an otherwise properly supported motion for summary judgment" (emphasis

21   original)). "Where the record taken as a whole could not lead a rational trier of fact to find for the

22   non-moving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587; Liberty

23   Lobby, 477 U.S. at 248 (a "dispute about a material fact is 'genuine' " where "the evidence is such

24   that a reasonable jury could return a verdict for the nonmoving party").

25   //

26   //

27   //

28   //

**DISCUSSION**

**A.    Applicable Law**

*1.    Negligence*

"Negligent infliction of emotional distress is not an independent tort [citation], nor is negligent mishandling of human remains." Christensen v. Superior Court, 54 Cal.3d 868, 884 (1992), fn. omitted. The Court therefore construes Plaintiffs' Fifth Cause of Action as a negligence claim. Id.

"To raise a *prima facie* claim of negligence in California law, a plaintiff must prove: 1) the existence of a duty to exercise due care; 2) a breach of that duty; 3) causation; and 4) damage." Johnson v. PNC Mortg., 2016 WL 861089, at *4 (N.D. Cal. Mar. 7, 2016) (citing Merrill v. Navegear, Inc., 26 Cal.4th 465, 500 (2001)).

*2.    Municipal Liability*

Section 815, subdivision (a), of the California Government Code states that "[e]xcept as otherwise provided by statute … [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov. Code § 815, subd. (a).

Plaintiffs' Fifth Cause of Action therefore alleges against Tuolumne County (and Stanislaus County) "vicarious liability for acts and omissions of county employees" pursuant to Section 815.2, subdivision (a), and Section 820, subdivision (a), of the California Government Code. See Doc. No. 33 at 14:20-24.[2] Subdivision (a) of Section 815.2 provides, in pertinent part, that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." And subdivision (a) of Section 820 states, in pertinent part, that "[e]xcept as otherwise provided by statute …, a public employee is liable for injury caused by his act or omission to the same extent as a private person."

---

[2] Page citations to documents filed electronically are to the page number in the CM/ECF stamp at the top of each page.

4

### B.   Parties' Arguments

The crux of Plaintiffs' Fifth Cause of Action is that Tuolumne County and Stanislaus County "negligently caused, and/or failed to prevent, the severe decomposition of [Mr. Shaw's] remains, which resulted in [Mr. Shaw's] remains being in a gruesome, rancid, and severely decomposed position, which caused Plaintiffs severe emotional distress upon the discovery of [Mr. Shaw's] remains." Doc. No. 33 at 15:3-8.

Tuolumne County contends that it is entitled to summary judgment on this claim because Plaintiffs cannot show that Tuolumne County (or persons in its employ) had a duty of care with respect to Mr. Shaw's remains and or that conduct of persons acting on behalf of Tuolumne County caused the decomposition of Mr. Shaw's remains. See Doc. No. 59-1. Further, Tuolumne County asserts immunity under Section 820.2 of the California Government Code because "coroner's offices have the discretion to decide how to handle remains." Doc. No. 70 at 4:20-24.

Plaintiffs argue that the Ninth Circuit has recognized "a duty of care owed to a decedent's surviving family members to protect, preserve, and respect the dignity of the remains of their loved one," Doc. No. 66 at 4, and that irregularities involving Mr. Shaw's autopsy and death certificate create questions of fact as to the handling of Mr. Shaw's remains. Id. at 10.

### C.   Material Facts

The material facts as to which there is no dispute between the parties are as follows:

Mr. Shaw died in Tuolumne County on September 6, 2018 while in the custody of the SCC. See Doc. No. 70-2 at 1:25-27 (Undisputed Material Fact ("UMF") #1). The Coroner's Division of the Tuolumne County Sheriff-Coroner's Department ("Tuolumne County Coroner's Office") does not perform its own autopsies, but instead contracts with Stanislaus County to provide forensic pathology services. Id. at 2:4-15 (UMF #2). On September 10, 2018, Deputy Oliver Imlach of the Tuolumne County Coroner's Office transported Mr. Shaw's remains from Tuolumne County to the Stanislaus County Coroner's Office and released Mr. Shaw's remains into the custody of the Stanislaus County Coroner's Office for autopsy. Id. at 2:16-21 (UMF #3). On September 13, 2018, a forensic pathologist employed by the Stanislaus County Coroner's Office, Dr. Sung-Ook Baik, performed an autopsy on Mr. Shaw's remains. Id. at 4:13-18 (UMF

1  #6). Three Tuolumne County Sheriff Deputies attended—but did not perform—the autopsy. Id. at
2  4:4-12 (UMF #5).

3        Plaintiffs designated Solomon's Mortuary in Los Angeles, California to direct the
4  disposition of Mr. Shaw's remains. Id. at 5:11-14 (UMF #7). Solomon's Mortuary arranged for the
5  transportation of Mr. Shaw's remains from Stanislaus County to Los Angeles County. Id. at 5:17-
6  19 (UMF #8). Derrick Williams, on behalf of Solomon's Mortuary, picked up Mr. Shaw's remains
7  from the Stanislaus County Coroner's Office in Modesto at 1:49 p.m. on September 14, 2018. Id.
8  at 5:23-27 (UMF #9). Mr. Williams then transported Mr. Shaw's remains to Solomon's Mortuary
9  in Los Angeles. Id. at 6:2-8 (UMF #10). It is more than 300 miles from the Stanislaus County
10 Coroner's facility in Modesto to Solomon's Mortuary.[3] Id. at 6:9-12 (UMF #11).

11       Plaintiffs have no information regarding "what happened" with Mr. Shaw's remains after
12 they were removed from Modesto by Solomon Mortuary's courier. Doc. No. 70-2 at 6:13-18
13 (UMF #12). For example, Plaintiffs do not know how long it took for Mr. Shaw's remains to get
14 from Stanislaus County to the Solomon Mortuary. Id. at 6:18-23 (UMF #13); what kind of vehicle
15 was used to transport Mr. Shaw's remains from Stanislaus County to Solomon's Mortuary, id. at
16 6:24-27 (UMF #14); or whether Mr. Shaw's remains were refrigerated during transport. Id. (UMF
17 #14).

18       Plaintiffs first learned of the alleged decomposition of Mr. Shaw's remains when Mr.
19 Shaw's father viewed Mr. Shaw's remains in Los Angeles. Id. at 7:4-8 (UMF #15). Plaintiffs do
20 not know exactly which day Mr. Shaw's father viewed Mr. Shaw's remains but state that "it had to
21 be some time in the week preceding Mr. Shaw's September 21, 2018 funeral." Id. at 70-2 at 7:9-
22 14.

23     **D.**   **Discussion**

24       The central question here is whether there is a dispute of material fact as to the condition of
25 Mr. Shaw's remains before it was released into the custody of Mr. Williams for transport to the
26 Solomon Mortuary in Los Angeles. Specifically, Plaintiffs dispute Tuolumne County's assertions

27 _____

28 [3] The Court grants Tuolumne County's unopposed request for judicial notice, Doc. No. 59-8, as to this easily
verifiable fact. See Fed.R.Evid. 201(b)(2), (c)(2).

1  that "[t]here is no evidence that [Mr.] Shaw's remains were decomposed at the time Deputy

2  Imlach released custody of those remains to [the] Stanislaus County Coroner's Office on

3  September 10, 2018," Doc. No. 70-2 at 2:26-3:7, and that Dr. Baik "did not see any evidence of

4  decomposition during the autopsy" on September 13, 2018. Id. at 4:15-18.

5        Tuolumne County cites the following evidence regarding the condition of Mr. Shaw's

6  remains prior to September 14, 2018:

7        Deputy Imlach states in a declaration, on information and belief, that he transported Mr.

8  Shaw's remains "from the Tuolumne County Sheriff-Coroner's refrigerated unit in Sonora to the

9  Stanislaus County Coroner's Office on September 10, 2018." Doc. No. 59-6 at 1:22-27. He further

10  states that "transporting the remains of deceased individuals from the Tuolumne County Sheriff-

11  Coroner's refrigerated unit in Sonora to the Stanislaus County Coroner's Office was a regular part

12  of [his] assigned job duties in September, 2018," and that he "reviewed records maintained by the

13  Tuolumne County Sherriff-Coroner relating to Ms. Shaw's transportation and autopsy" showing

14  that he transported Mr. Shaw's remains to the Stanislaus County Coroner's Office on September

15  10, 2018. Id. at 2:1-9. In addition, Deputy Imlach states that he has been trained in and has

16  experience recognizing "signs of decomposed bodies including discoloration, bloating, and the

17  presence of odors," Doc. No. 59-6 at 2:26-28; that he does not believe he has "ever transported the

18  decomposed body of an adult, African-American male to the Stanislaus County Coroner's

19  facility"; and that he does not believe he has "ever noticed any signs of decomposition in any

20  adult, African American male that [he] has transferred to the Stanislaus County Coroner's

21  facility." Doc. No. 59-6 at 3:1-4.

22        Similarly, a legal clerk in the Stanislaus County Sheriff's Office, Rebecca Mello, states in

23  a declaration that records maintained by the Stanislaus County Sheriff-Coroner show that Deputy

24  Imlach transported Mr. Shaw's remains to the Stanislaus County Coroner's Office for autopsy on

25  September 10, 2018 and that Shaw's remains were placed into the main refrigeration unit at the

26  Stanislaus County Coroner's Office by Stanislaus County personnel at approximately 1:00 p.m. on

27  September 10, 2018. Doc. No. 59-4 at 2:6-12. Mello further states that, according to records

28  maintained by the Stanislaus County Sheriff-Coroner, Dr. Baik autopsied Mr. Shaw's remains on

September 13, 2018. Doc. No. 59-4 at 2:22-27.

In deposition, Dr. Baik testified that he did not "see any evidence of decomposition" in Mr. Shaw's remains. Doc. No. 59-3 at 33 (Deposition of Sung-Ook Baik, M.D. ("Baik Dep.") at 72:8-13). He also testified that signs of decomposition would be recorded in an autopsy report and that the report for the autopsy he conducted on Mr. Shaw's remains showed "no evidence of decomposition." Id. at 32-34 (Baik Dep. at 71:11-73:10).

In short, evidence set forth by Tuolumne County shows that persons trained to detect decomposition (and who were in direct contact with Mr. Shaw's remains) did not detect signs of decomposition when Mr. Shaw's remains were transferred from Tuolumne County to Stanislaus County on September 10, 2018 or at the time of Mr. Shaw's autopsy—the day before Mr. Shaw's remains were released to the courier hired by Solomon's Mortuary.

Plaintiffs set forth no direct evidence of decomposition while Mr. Shaw's remains were in the possession of Tuolumne County or Stanislaus County but argue that "[c]ircumstantial evidence suggests an effort among Stanislaus county officials and Tuolumne county officials to obfuscate the circumstances surrounding Mr.Shaw's death, casting doubt on representations as to the condition of Mr. Shaw's remains at all times."[4] Doc. No. 70-2 at 3:6-4:2. Specifically, Plaintiffs assert that:

- "Photographs were either not taken or destroyed by Tuolumne County officials present at the autopsy, in violation of Government Code 27521(c)(4)-(5), and in contravention of pathologist Dr. Baik's experience, who testified that Tuolumne sheriffs always take photographs of autopsies involving inmate deaths";
- "Dr. Baik testified that Mr. Shaw's tissue samples had been destroyed, but they appeared years later";
- "Mr. Shaw's remains weighed ten pounds more at autopsy as compared to admission, which Dr. Baik had never seen before in his career"; and
- "Tuolumne County's certification of death certificate lacked physician's signature,

---

[4] Tuolumne County makes various objections to Plaintiffs' evidence. Doc. No. 70-1. The objections do not bear on the disposition of this motion and are therefore overruled as moot.

1    in violation of [California Health & Safety] Code 102795, and was prepared

2    approximately seven months after it was due, in violation of [California Health &

3    Safety] Code 102800."

4  Doc. No. 67 at 2:18-3:20; see also Doc. No. 66 at 10-13.

5         The Court notes, as an initial matter, that several of these assertions do not square with the

6  record. For example, the portion of Dr. Baik's transcript cited by Plaintiffs with respect to

7  autopsies for persons who died in jail reads as follows:

8    Q.  Now, prior to this case, if you received a body from Tuolumne County
        that died in a jail, you would not take pictures of that body before –

9    A.  Okay.

10   Q.  -- the autopsy?

11   A.  Okay. Tuolumne County case -- every picture is taken by the Tuolumne Sheriffs
         Department. Not our officer.

12   Q.  Do they take pictures at the autopsy?

13   A.  Yes. They come and they take a picture.

14

15  Doc. No. 66-1 at 13 (Baik Dep. at 20:16-25). Such testimony indicates that Tuolumne County

16  personnel take pictures at autopsies in at least some instance, but it does not show, as Plaintiffs'

17  claim, that "Tuolumne sheriffs always take photographs of autopsies involving inmate death."

18       Similarly, subdivision (c) of California Government Code Section 27521 states that a

19  "postmortem examination or autopsy shall include … (4) [f]rontal and lateral facial photographs

20  with the scale indicated" and "(5) [n]otation and photographs, with a scale, of significant scars,

21  marks, tattoos, clothing items, or other personal effects found with or near the body." Subdivision

22  (a), however, states that Section 27521 applies to a postmortem examination or autopsy on "an

23  *unidentified* body or human remains." Cal. Gov. Code 27521, subd. (a) (emphasis added). Mr.

24  Shaw's remains were not "unidentified" and Plaintiffs make no attempt to show how Section

25  27521 otherwise applies in this case. The Court therefore sees no support for Plaintiffs' assertion

26  that "the absence of autopsy photos … is a flagrant violation of a statutory requirement." See Doc.

27  No. 66 at 11:4-6.

28       Finally, as to tissue samples, Dr. Baik testified at a March 3, 2021 deposition that tissue

1   samples are destroyed a year after an autopsy is conducted and that consequently he did not

2   "think" that Stanislaus County was still in possession (three years later) of tissue samples from

3   Mr. Shaw's autopsy. Doc. No. 66-1 at 11 (Baik Dep. at 13:5-20). An email offered as evidence by

4   Plaintiffs shows that defense counsel notified Plaintiffs' counsel approximately three months after

5   Dr. Baik's deposition, on June 28, 2021, that Dr. Baik had "located tissue slides from the autopsy

6   and sent them to a lab for analysis." Doc. No. 66-2 at 110. Plaintiffs statement that "Dr. Baik

7   testified that Mr. Shaw's tissue samples had been destroyed, but they appeared years later," <u>see</u>

8   Doc. No. 67 at 3:9-11; Doc. No. 66 at 11:16-12:2, is misleading.

9       Regardless, even if fully credited, Plaintiffs' contentions do not provide grounds for a

10  reasonable jury to conclude that Mr. Shaw's remains were neglected (or maltreated) while in the

11  control of Tuolumne County or its employees—let alone a basis for a jury to determine (as

12  required under the vicarious liability framework set up by Section 815 and 815.2 of the California

13  Government Code) which of Tuolumne County's agents were negligent. <u>See</u> <u>McKenzie v. Truckee</u>

14  <u>Tahoe Airport Dist.</u>, 2014 WL 5035297, at *1 (E.D. Cal. Oct. 8, 2014) ("By its plain terms,

15  section 815.2 dictates that a public entity cannot be found vicariously liable for the acts of its

16  employee, unless that employee could be found individually liable for those acts.")

17      At most, Plaintiffs' evidence casts shade of some sort on evidence set forth by Tuolumne

18  County showing that decomposition was not detected before the Mr. Shaw's remains were

19  released to Solomon's Mortuary's courier on September 14, 2018. Tuolumne County's motion,

20  however, does not turn on that evidence. The portion of Tuolumne County's summary judgment

21  motion relevant here is predicated on the contention that Plaintiffs cannot make out a *prima face*

22  negligence claim because nothing on the record shows that one or more persons acting on behalf

23  of Tuolumne County caused the decomposition observed by Mr. Shaw's father after Mr. Shaw's

24  remains had been entrusted to the Solomon's Mortuary. <u>See</u> Doc. No. 59 at 9:1. Plaintiffs' putative

25  evidence with respect to irregularities involving Mr. Shaw's autopsy and death certificate do not

26  resolve that defect.

27      The one other piece of evidence that Plaintiffs offer is that Mr. Shaw's remains

28  were "severely decomposed" when viewed by Mr. Shaw's father at the Solomon Mortuary prior

to Mr. Shaw's September 21, 2018 funeral. Doc. No. 66 at 3:13. As set forth above, however, it is a 300-mile trip from Stanislaus County to Solomon's Mortuary in Los Angeles, and Plaintiffs can provide no information regarding the manner in which Mr. Shaw's remains were transported or how they were cared for while they were in the care of Solomon's Mortuary. Further, they cannot state when, exactly, Mr. Shaw's father first saw Mr. Shaw's remains. These intervening events— the passage of time plus the transportation and storage of Mr. Shaw's remains by a third party— not only a preclude a jury from finding breach based on the decomposition of Mr. Shaw's remains, but also preclude a finding that whatever wrongdoing may have occurred on the part of Tuolumne County agents caused the decomposition observed by Mr. Shaw's father. See Bowman v. Wyatt, 186 Cal. App. 4th 286, 312 (2010), as modified on denial of reh'g (July 28, 2010) ("evidence of causation must rise to the level of a reasonable probability based upon competent testimony" and a "possible cause only becomes probable when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action."),

In short, Tuolumne County showed in its moving papers that Plaintiffs lack evidence to support their negligence claim against Tuolumne County. See Fairbank, 212 F.3d at 532. The burden then shifted to Plaintiffs to produce evidence sufficient to support a jury verdict in their favor. See Deveraux, 263 F.3d at 1076. Plaintiffs have failed to meet that burden and thus, Tuolumne County is entitled to summary judgment on Plaintiffs' Fifth Cause of Action.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiffs fail to meet their burden to identify evidence that could allow a reasonable jury to find that decomposition observed by Mr. Shaw's father prior to Mr. Shaw's September 21, 2018 funeral was caused by a breach of duty on the part of someone working for Tuolumne County. The Court will therefore grant summary judgment in Tuolumne County's favor on Plaintiffs' Fifth Cause of Action for negligence.

In light of this ruling, it is unnecessary for the Court to address Tuolumne County's immunity argument under Section 820 of the California Government Code or the question of whether Tuolumne County (or its employees) had a duty to Plaintiffs under California law with respect to Mr. Shaw's remains. It appears to the Court, however, that the analysis on which the

ruling here is based could apply equally to Stanislaus County. The Court will therefore order Plaintiffs to show cause with 21 days of the date of electronic service of this order why the Court should not grant summary judgment in Stanislaus County's favor on Plaintiffs' negligence claim.

**<u>ORDER</u>**

Accordingly, IT IS HEREBY ORDERED that:

1. Tuolumne County's motion for summary judgment (Doc. No. 59) is GRANTED;

2. Summary judgment is granted in favor of Tuolumne County on the Fifth Cause of Action in the First Amended Complaint (Doc. No. 33);

3. Tuolumne County is dismissed from this case;

4. Plaintiffs shall have 21 days of the date of electronic service of this order to show cause in writing why summary judgment should not be granted in favor of Stanislaus County on the Fifth Cause of Action based on the analysis applied here;

5. Stanislaus County will have 14 days from the date of electronic service of Plaintiffs' filing to file a response, and Plaintiffs will have seven days from the date of electronic service of Plaintiffs' response to file a reply, should they choose to do so; and

6. If Plaintiffs fail to make the filing ordered here in the timeframe provided, the Court will grant summary judgment in Stanislaus County's favor on the Fifth Cause of Action and close this case without further notice to the parties.

IT IS SO ORDERED.

Dated:   March 25, 2022

SENIOR  DISTRICT  JUDGE